UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

SAVARIO S. PITTS,

       Petitioner,

v.                      Case No: 2:15-cv-13-FtM-29MRM

SECRETARY, DOC and FLORIDA
ATTORNEY GENERAL,

       Respondents.[1]

_____

## OPINION AND ORDER

This matter comes before the Court upon a petition for habeas corpus relief filed pursuant to 28 U.S.C. § 2254 by Savario S. Pitts ("Petitioner"), a prisoner of the Florida Department of Corrections (Doc. 1, filed January 12, 2015). Petitioner attacks the convictions and sentences entered against him by the Twentieth Judicial Circuit Court in Charlotte County, Florida for home invasion robbery and kidnaping. Id. Respondent filed a response and a supplemental response to the petition (Doc. 9; Doc. 16). Despite having an opportunity to do so (Doc. 17), Petitioner filed no reply to the responses.

---

[1] When the petitioner is incarcerated and challenges his present physical confinement "the proper respondent is the warden of the facility where the prisoner is being held, not the Attorney General or some other remote supervisory official." Rumsfeld v. Padilla, 542 U.S. 426, 436 (2004)(citations omitted). In Florida, the proper respondent in this action is the Secretary of the Florida Department of Corrections. Therefore, the Florida Attorney General will be dismissed from this action.

Petitioner raises eleven claims in his petition.  Upon due consideration of the pleadings and the state court record, the Court concludes that each claim must be dismissed or denied.  Because the Court may resolve the Petition on the basis of the record, an evidentiary hearing is not warranted.  See Schriro v. Landrigan, 550 U.S. 465, 474 (2007) (if the record refutes the factual allegations in the petition or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing).

I.   **Background and Procedural History**

On September 22, 2004, Petitioner was charged by information with home invasion robbery with a firearm (count one); aggravated battery with a firearm (count two); two counts of kidnaping (counts three and four); and shooting within or into a building (count five) (Ex. A1).[2]  After a jury trial, Petitioner was found guilty of counts one through four and sentenced to three concurrent sentences of life in prison with a twenty-year minimum mandatory sentence (Ex. A2). Florida's Second District Court of Appeal *per curiam* affirmed Petitioner's convictions and sentences (Ex. B4); Pitts v. State, 9 So. 3d 626 (Fla. 2d DCA 2006).

---

[2] Unless indicated otherwise, references to exhibits and appendices are to those file by Respondent on July 8, 2015 (Doc. 12).  Citations to the trial transcript, located in appendix five, will be cited as (T. at __).

On October 7, 2009, Petitioner filed a petition and an amended petition alleging ineffective assistance of appellate counsel (Ex. C1; Ex. C2).  Florida's Second District Court of Appeal denied the petitions (Ex. C3); Pitts v. State, 36 So. 3d 671 (Fla. 2d DCA 2010).

On January 19, 2011, Petitioner filed a motion for post-conviction relief pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure ("Rule 3.850 motion") (Ex. D1).  After filing numerous amended Rule 3.850 motions, Petitioner was directed to file a consolidated Rule 3.850 motion, but was cautioned that all new claims must relate back to timely claims (Ex. D11). Petitioner filed a new motion in which he added several new claims that did not relate back to his timely Rule 3.850 motion (Ex. D12).  The post-conviction court dismissed the untimely claims and addressed the remaining claims on the merits (Ex. D13).  The post-conviction court was *per curiam* affirmed by Florida's Second District Court of Appeal (Ex. D14).

Petitioner filed the instant petition on January 12, 2015 (Doc. 1).

## II.  Governing Legal Principles

### A.  Standard of Review Under the Antiterrorism Effective Death Penalty Act ("AEDPA")

Habeas corpus is neither a substitute for a direct appeal nor a device for federal review of a guilty verdict rendered in state court. Jackson v. Virginia, 443 U.S. 307, 332 n.5 (1979). Indeed,

pursuant to the AEDPA, federal habeas relief may not be granted with respect to a claim adjudicated on the merits in state court unless the adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. White v. Woodall, 134 S. Ct. 1697, 1702 (2014). A state court's summary rejection of a claim, even without explanation, qualifies as an adjudication on the merits which warrants deference. Ferguson v. Culliver, 527 F.3d 1144, 1146 (11th Cir. 2008). Notably, a state court's violation of state law is not sufficient to show that a petitioner is in custody in violation of the "Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); Wilson v. Corcoran, 562 U.S. 1, 16 (2010).

"Clearly established federal law" consists of the governing legal principles, rather than the dicta, set forth in the decisions of the United States Supreme Court at the time the state court issues its decision. White, 134 S. Ct. at 1702; Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams v. Taylor, 529 U.S. 362, 412 (2000)). That said, the Supreme Court has also explained that "the lack of a Supreme Court decision on nearly identical facts

does not by itself mean that there is no clearly established federal law, since 'a general standard' from [the Supreme Court's] cases can supply such law." Marshall v. Rodgers, 133 S. Ct. 1446, 1449 (2013) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)). State courts "must reasonably apply the rules 'squarely established' by [the Supreme] Court's holdings to the facts of each case. White, 134 S. Ct. at 1706 (quoting Knowles v. Mirzayance, 556 U.S. 111, 122 (2009)).

Even if clearly established federal law on point exists, habeas relief is only appropriate if the state court decision was "contrary to, or an unreasonable application of," that federal law. 29 U.S.C. § 2254(d)(1). A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result from the Supreme Court when faced with materially indistinguishable facts. Ward v. Hall, 592 F.3d 1144, 1155 (11th Cir. 2010); Mitchell v. Esparza, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of the Supreme Court's precedents if the state court correctly identifies the governing legal principle, but applies it to the facts of the petitioner's case in an objectively unreasonable manner, Brown v. Payton, 544 U.S. 133, 134 (2005); Bottoson v. Moore, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court

either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." Bottoson, 234 F.3d at 531 (quoting Williams, 529 U.S. at 406). The unreasonable application inquiry "requires the state court decision to be more than incorrect or erroneous," rather, it must be "objectively unreasonable." Lockyer v. Andrade, 538 U.S. 63, 75-77 (2003) (citation omitted); Mitchell, 540 U.S. at 17-18; Ward, 592 F.3d at 1155. The petitioner must show that the state court's ruling was "so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." White, 134 S. Ct. at 1702 (quoting Harrington v. Richter, 562 U.S. 86 (2011)). Moreover, "it is not an unreasonable application of clearly established Federal law for a state court to decline to apply a specific legal rule that has not been squarely established by [the Supreme] Court." Knowles, 556 U.S. at 122.

Finally, when reviewing a claim under § 2254(d), a federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct[,]" and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); Burt v. Titlow, 134 S. Ct. 10, 15 (2013) ("[A] state-court factual determination is not unreasonable merely because the

federal habeas court would have reached a different conclusion in the first instance.") (quoting Wood v. Allen, 558 U.S. 290, 293 (2010)).

**B.  Standard for Ineffective Assistance of Counsel**

In Strickland v. Washington, the Supreme Court established a two-part test for determining whether a convicted person is entitled to relief on the ground that his counsel rendered ineffective assistance. 466 U.S. 668, 687-88 (1984). A petitioner must establish that counsel's performance was deficient and fell below an objective standard of reasonableness and that the deficient performance prejudiced the defense. Id.  This is a "doubly deferential" standard of review that gives both the state court and the petitioner's attorney the benefit of the doubt. Burt, 134 S. Ct. at 13, (citing Cullen v. Pinholster, 131 S. Ct. 1388, 1403 (2011)).

The focus of inquiry under Strickland's performance prong is "reasonableness under prevailing professional norms." Strickland, 466 U.S. at 688-89.  In reviewing counsel's performance, a court must adhere to a strong presumption that "counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689.  Indeed, the petitioner bears the heavy burden to "prove, by a preponderance of the evidence, that counsel's performance was unreasonable[.]" Jones v. Campbell, 436 F.3d 1285, 1293 (11th Cir. 2006).  A court must "judge the reasonableness of counsel's

conduct on the facts of the particular case, viewed as of the time of counsel's conduct," applying a "highly deferential" level of judicial scrutiny. Roe v. Flores-Ortega, 528 U.S. 470, 477 (2000) (quoting Strickland, 466 U.S. at 690).

As to the prejudice prong of the Strickland standard, Petitioner's burden to demonstrate prejudice is high. Wellington v. Moore, 314 F.3d 1256, 1260 (11th Cir. 2002). Prejudice "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." Strickland, 466 U.S. at 687. That is, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. At 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Strickland, 466 U.S. at 694.

**C.   Exhaustion and Procedural Default**

The AEDPA precludes federal courts, absent exceptional circumstances, from granting habeas relief unless a petitioner has exhausted all means of available relief under state law. Exhaustion of state remedies requires that the state prisoner "fairly presen[t] federal claims to the state courts in order to give the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights[.]" Duncan v. Henry, 513 U.S. 364, 365 (1995) (citing Picard v. Connor, 404 U.S. 270,

275-76 (1971)).   The petitioner must apprise the state court of the federal constitutional issue, not just the underlying facts of the claim or a similar state law claim.  Snowden v. Singletary, 135 F.3d 732 (11th Cir. 1998).

In addition, a federal habeas court is precluded from considering claims that are not exhausted and would clearly be barred if returned to state court. Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991) (if a petitioner has failed to exhaust state remedies and the state court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred, there is a procedural default for federal habeas purposes regardless of the decision of the last state court to which the petitioner actually presented his claims).

Finally, a federal court must dismiss those claims or portions of claims that have been denied on adequate and independent procedural grounds under state law. Coleman, 501 U.S. at 750.  If a petitioner attempts to raise a claim in a manner not permitted by state procedural rules, he is barred from pursuing the same claim in federal court. Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

A petitioner can avoid the application of procedural default by establishing objective cause for failing to properly raise the claim in state court and actual prejudice from the alleged

constitutional violation. <u>Spencer v. Sec'y, Dep't of Corr.</u>, 609 F.3d 1170, 1179-80 (11th Cir. 2010). To show cause, a petitioner "must demonstrate that some objective factor external to the defense impeded the effort to raise the claim properly in state court." <u>Wright v. Hopper</u>, 169 F.3d 695, 703 (11th Cir. 1999); <u>Murray v. Carrier</u>, 477 U.S. 478 (1986).  To show prejudice, a petitioner must demonstrate there is a reasonable probability the outcome of the proceeding would have been different. <u>Crawford v. Head</u>, 311 F.3d 1288, 1327-28 (11th Cir. 2002).

A second exception, known as the fundamental miscarriage of justice, only occurs in an extraordinary case, where a "constitutional violation has probably resulted in the conviction of one who is actually innocent[.]" <u>Murray v. Carrier</u>, 477 U.S. 478, 479-80 (1986).  Actual innocence means factual innocence, not legal insufficiency. <u>Bousley v. United States</u>, 523 U.S. 614, 623 (1998).  To meet this standard, a petitioner must "show that it is more likely than not that no reasonable juror would have convicted him" of the underlying offense. <u>Schlup v. Delo</u>, 513 U.S. 298, 327 (1995).  "To be credible, a claim of actual innocence must be based on [new] reliable evidence not presented at trial." <u>Calderon v. Thompson</u>, 523 U.S. 538, 559 (1998) (quoting <u>Schlup</u>, 513 U.S. at 324).

### III. <u>Analysis</u>

####    A.    Claims One and Two

In Claim One, Petitioner asserts that trial counsel ("Counsel") was ineffective for agreeing to allow the State to introduce hearsay testimony at trial (Doc. 1 at 4). Specifically, he argues that it was error for Counsel to allow the victims to testify that they had received an anonymous telephone call identifying Petitioner as one of the people who had broken into their home and robbed them at gunpoint. <u>Id.</u> at 5. Petitioner asserts that although he agreed with the strategy at trial, "he had no real understanding of it" and allowing the testimony "was essentially allowing a third corroborating identification of Petitioner as the robber without that identification being subjected to adversarial challenge." <u>Id.</u> at 6. In Claim Two, Petitioner argues that the testimony "allowed detective Marinola to testify to having accessed the driver's license database and locating Petitioner's driver license photo for inclusion in the photo line-up." <u>Id.</u> at 7.[3]

Petitioner raised these claims in his Rule 3.850 motion, and the trial court denied them as follows:

_____

[3] Claim Two is not a stand-alone claim of ineffective assistance of counsel. Rather, it is Petitioner's explanation of how he suffered prejudice from counsel's failure to object to the admission of hearsay testimony. Because the Court concludes that counsel's performance was not deficient, it is unnecessary to discuss the prejudice prong of the <u>Strickland</u> analysis. <u>See</u> discussion <u>infra</u> Claim One.

- 11 -

Defendant asserts that trial counsel was ineffective for permitting hearsay testimony regarding an anonymous phone call identifying the Defendant as the robber. Defendant references a pretrial hearing in which trial counsel sought the exclusion of the phone call and the State agreed. Defendant then claims that trial counsel decided to allow the previously excluded testimony during trial "for reasons as yet explained". Defendant concedes that he informed the Court that he consented to trial counsel's strategy on the record, but claims that trial counsel had never explained the reason for allowing the testimony. He asserts that the Court should reconsider his consent because it was not knowing or voluntary.

The hearsay issue was discussed at court before trial, in which trial counsel informed the Court that he was unable to determine whether he wanted to exclude the hearsay statements for strategic reasons. Trial counsel then clarified that he objected to the State eliciting the hearsay statements during its case in chief but that they may be admissible if the defense chose to bring it up in its case in chief. At trial, the State informed the Court that trial counsel planned "on eliciting that [hearsay] testimony and that since they are going to elicit that, they do not object to me eliciting the information that there was a phone call and that phone call told [the victims] about [the codefendant] and Mr. Pitts."

The only part that trial counsel sought to avoid was the fact that the photograph came from the sheriff's website. At the conclusion of the discussion, the Defendant stated on the record that he agreed with trial counsel's decision to elicit that information during a colloquy with the Court.

"If the Defendant consents to counsel's strategy, there is no merit to a claim of ineffective assistance of counsel." Gamble v. State, 877 So. 2d 706, 714 (Fla. 2004)(citing Nixon v. [Singletary],758 So. 2d 618,

623(Fla.[], <u>cert. denied</u>, 5531 U.S. 980, 121 S. Ct. 429, 148 L. Ed. 2d 437 (2000); <u>see also</u> <u>Mendoza v. State</u>, 81 So. 3d 579 (Fla. 3d DCA2012)(holding that defense counsel's decision to not call witnesses was presumed to be reasonable and strategic because the record reflected that defendant affirmatively agreed with counsel's strategic decision during a colloquy conducted by the trial judge). Defendant consented to trial counsel's strategic decision before the Court during a colloquy. Therefore, the Court finds that Defendant has failed to demonstrate an entitlement to relief. Accordingly, Ground One is denied.

. . .

Defendant [also] asserts . . . that the admission of hearsay allowed Detective Marinola to testify about creating a lineup based on the phone call made to the victims which identified Defendant as the robber. Defendant asserts that Marinola's "sanctioning" of the information by creating a lineup gave "the jury the confidence to find the identification[s] reliable." Defendant further argues that but for the admission of hearsay statement, the jury would not have heard about the lineup that lead to his identification.

[The] Court finds that Defendant has failed to demonstrate an entitlement to relief for the reasons stated above. With respect to Defendant's additional claim, the Court finds that Defendant has raised a legally and facially insufficient claim. Therefore, Defendant has failed to meet his burden of demonstrating that counsel acted deficiently or that he was prejudiced within the meaning of <u>Strickland</u>. Accordingly, Ground One(a) is denied.

(Ex. D14 at 2-4) (internal citations to the record and numbering omitted). The post-conviction court's rejection of these claims

was affirmed by Florida's Second District Court of Appeal (Ex. D15).

Petitioner argues that the state court's rejection was unreasonable because he had no "real" understanding of why Counsel decided to allow the hearsay testimony and only agreed with the strategy because Counsel thought doing so was in his (Petitioner's) best interest (Doc. 1 at 5). Respondent counters that Counsel strategically decided against objecting to the hearsay testimony and that "an attorney's decision to waive an evidentiary objection can be a legitimate trial strategy." (Doc. 16 at 8). Indeed, "[c]ases in which deliberate strategic decisions have been found to constitute ineffective assistance are [few and far] between." Spaziano v. Singletary, 36 F.3d 1028, 1039 (11th Cir. 1994). The state court record compels a conclusion that Counsel's decision to allow the hearsay testimony was based upon sound trial strategy.

At a pre-trial hearing, the prosecutor told the court that at Terry Smith's ("Smith's")[4] trial, the defense moved to exclude testimony about the anonymous phone call that identified Petitioner and Smith as the robbers (Ex. A4 at 14). The prosecutor expressed concern that if he did not ask the victims why they suspected Petitioner in the first place, Counsel would imply to

---

[4] The victims told police that two men, one white and one black, robbed them at gunpoint. Smith was accused of being the second robber and was tried separately and convicted prior to Petitioner's trial.

the jury that the victims' identifications of Petitioner were tainted because they (the victims) had already looked up Petitioner's identity on the internet. Id. The prosecutor explained that "we want to make sure that there's not an opportunity to make it look like the State or the victims were hiding something from the jury, so I want to make sure how the Defense wishes to proceed on that issue." Id. at 14-15. The prosecutor explained that all testimony regarding the anonymous call had been omitted at Smith's trial and that the victims had testified that a detective showed them a photo lineup and they used it to identify Smith as the black robber. The Court questioned whether Counsel wanted to proceed the same way:

> COURT.    Okay. So do you want to mull that over until Monday or –
>
> COUNSEL.  Well, Judge, I mean, no, I mean, no, I think I'd answer it that way. If they're asking if I'm agreeing to allow them to introduce that evidence at trial, no, I'm not agreeing to them doing – during their case in chief procedurally, they can't do it.
>
> Court.    Okay.
>
> COUNSEL.  If I choose to bring it up in my case or in cross, so be it. If I bring up evidence of his wrongdoings or prior past or whatever it may be, that's our case to that. But their case in chief, they can't do it.
>
> COURT.    Um-hum.
>
> COUNSEL.  And that's the Rules of Procedure.

COURT.      Okay.

STATE.      So just the – so the Court's aware
            that if that issue happens, the
            State's going to believe at that
            time they've opened the door to the
            phone call and will be seeking to
            introduce that.

COURT.      Okay.

STATE.      That's just a heads up.

COUNSEL.    I completely agree with you.  If we
            open the door to it, then that gives
            them the right to expand into it.

(Ex. A4 at 17-18).  Immediately before trial, Counsel informed the
state that he planned to elicit testimony regarding the anonymous
call and that he did not object to the state "eliciting the
information that there was a phone call and that phone call told
them about Smith and a Mr. Pitts.  They looked on the computer."
(T. at 109).  However, Counsel did not want the jury to know that
the victims found Petitioner's photograph on a Charlotte County
Sheriff's Office webpage.  Counsel was also concerned that
testimony regarding the victims' use of the internet to find
Petitioner's photograph would lead the jurors to deduce that the
photograph came from Petitioner's arrest record.  The Court
suggested that "[t]he words internet and Charlotte County Sheriff
Office website, or on the computer, that's out," and both sides
agreed (T. at 115-16).  At trial, both victims testified that
they received a phone call telling them that Petitioner was one of
the robbers and subsequently identified him from a photograph

- 16 -

before calling the police with his identity. Id. at 142 and 173. They then picked Petitioner from a photo-array prepared by the police. Id. at 142, 145, and 148.

The gravamen of Petitioner's defense strategy was that the victims were mistaken in their identification of Petitioner as the robber.  Counsel questioned the victims about their ability to clearly observe the white man during the robbery and pointed out inconsistencies in their initial descriptions to the police (T. at 152, 154, 159, 177, 182, 183, 186, 187, 188).  Counsel questioned the investigating detective about other possible suspects, noted that Petitioner had not been a suspect prior to the anonymous call, and queried as to whether the detective had investigated the origin of the call. Id. at 208.  During closing, Counsel argued that the victims had not been able to clearly see the white robber and insinuated that Petitioner was identified by the victims only because they found his photograph after the anonymous call. Id. at 320-31.

It was sound trial strategy for Counsel to imply that the witnesses identified Petitioner as a robber, not from the actual robbery itself, but because he was identified to them in a phone call.[5]  Accordingly, competent counsel could have decided against

---

[5] Whether this was Counsel's actual strategy is irrelevant. Strickland's performance prong calls for an objective inquiry. See Chandler v. United States, 218 F.3d 1305, 1315 & n.16 (11th Cir. 2000) (explaining that "[t]he reasonableness of a counsel's performance is an objective inquiry," which asks "whether some

objecting to the admission of the hearsay testimony.  Petitioner has not satisfied Strickland's performance prong.  Claims One and Two are denied pursuant to 28 U.S.S. §§ 2254(d)

**B.   Claim Three**

Petitioner asserts that Counsel failed to conduct a meaningful voir dire tailored to the facts of the case to ensure that he was tried in accordance to his constitutional right to a fair and impartial jury (Doc. 1 at 9-10).  Petitioner raised this claim in his Rule 3.850 motion where it was dismissed by the post-conviction court as untimely (Ex. D13).  Respondent now argues that Petitioner procedurally defaulted this claim by failing to fairly present it to the state courts (Doc. 16 at 12) (citing Henry v. Warden, Ga. Diagnostic Prison, 750 F.3d 1226, 1230 (11th Cir. 2014); Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001)).

Generally, a state procedural ruling provides an "adequate and independent" ground to deny relief under state law, which bars federal review of the underlying claim. See Marek v. Singletary, 62 F.3d 1295, 1301 (11th Cir. 1995).  However, a federal court may still address the merits of the claim if the petitioner establishes

---

reasonable lawyer could have conducted the trial in that manner" and requires a petitioner to show that "no competent counsel would have taken the action that his counsel did take"); Castillo v. Sec'y, Fla. Dep't of Corr., 722 F.3d 1281, 1285 n.2 (11th Cir. 2013) ("The relevant question under Strickland's performance prong, which calls for an objective inquiry, is whether any reasonable lawyer could have elected not to object for strategic or tactical reasons, even if the actual defense counsel was not subjectively motivated by those reasons.").

cause for the default and actual prejudice. <u>Wainwright v. Sykes</u>, 433 U.S. 72, 87-88 (1977). Petitioner does not explain why he did not properly raise this claim.  However, in his last Rule 3.850 motion, Petitioner faulted his post-conviction counsel for failing to timely file a Rule 3.850 motion (Ex. D12 at 2-3).

In <u>Martinez v. Ryan</u>, 132 S. Ct. 1309 (2012), the United State Supreme Court held:

> Where, under state law, claims of ineffective assistance of trial counsel must be raised in an initial-review collateral proceeding, a procedural default will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.

<u>Id.</u> at 1320.[6]  Under <u>Martinez</u>, a petitioner must establish that his underlying ineffective assistance claim is "substantial" – that is, that it has "some merit" before the procedural default can be excused. 1132 S. Ct. at 1318-19.  This claim is not "substantial" and does not fall within <u>Martinez</u>' equitable exception to the procedural bar.

The Sixth Amendment guarantees the accused a trial by an impartial jury in federal criminal prosecutions. U.S. Const. amend

---

[6] In 2013, the Supreme Court confirmed that the <u>Martinez</u> ruling applied to prisoners who technically had the ability to bring their ineffective assistance claims on direct appeal of their conviction, but for all intents and purposes had to bring it in their first habeas petition. <u>Trevino v. Thaler</u>, 133 S. Ct. 1911, 1921 (2013).

VI.   Because "trial by jury in criminal cases is fundamental to the American scheme of justice," the Due Process Clause of the Fourteenth Amendment guarantees the same right to the accused in state criminal prosecutions. Duncan v. Louisiana, 391 U.S. 145, 149 (1968).   As with federal law, the test for determining juror competency in the Florida courts is "whether the juror can lay aside any bias or prejudice and render his verdict solely upon the evidence presented and the instructions on the law given to him by the court." Lusk v. State, 446 So. 2d 1038, 1041 (Fla. 1984).

In the instant case, each juror was asked by the court to provide some background information (T. at 15). The prosecutor asked the entire venire whether anyone would treat the testimony of a law enforcement officer differently from that of a civilian. Id. at 38-40.   The prosecutor also proposed a hypothetical scenario about sufficiency of the evidence and asked whether any juror would have difficulty holding a "wheelman" responsible for the acts of his cohorts. Id. at 45-47, 48-52.   Counsel asked questions of several prospective jurors and asked the venire whether any owned a handgun or were opposed to handgun ownership. Id. at 58-61, 70-77.   Seven jurors were stricken for cause, and Counsel exercised nine peremptory strikes. Id. at 81-87.

Nothing in the record suggests that Counsel's questioning of the jury was deficient.   The Eleventh Circuit has cautioned that courts applying Strickland must "defer to trial counsel's

performance and eschew the distorting effects of hindsight" when interpreting a prospective juror's statements and trial counsel's decision whether or not to leave that person on the jury. <u>Harvey v. Warden, Union Corr. Inst.</u>, 629 F.3d 1228, 1247 (11th Cir. 2011); <u>see also Babb v. Crosby</u>, 197 F. App'x 885, 887 (11th Cir. 2006) ("the Supreme Court has not concluded that a lawyer who leaves an arguably biased juror on a jury is *per se* ineffective").  Moreover, "[a]ssessing jurors during voir dire also requires an evaluation of demeanor and credibility. Review of counsel's performance is highly deferential in any case, but the case for deference is even greater when counsel is evaluating credibility." <u>Bell v. United States</u>, 351 F. App'x 357, 360 (11th Cir. 2009) (internal citation omitted).

Likewise, because empaneled jurors are presumed impartial, to satisfy <u>Strickland</u>'s prejudice prong, Petitioner must show that the jury selection process produced a juror that was actually biased against him. <u>Smith v. Phillips</u>, 455 U.S. 209, 215 (1982); <u>Rogers v. McMullen</u>, 673 F.2d 1185, 1189 (11th Cir. 1982) (defendant's Sixth Amendment right to a fair and impartial jury was not violated absent a showing that a jury member hearing the case was actually biased against him).  Other than speculating that a predominately female jury could produce an "overwhelming sense of prejudice" with regards to crimes against women and noting that Juror Sands had been "an apparent victim of domestic abuse"

(Doc. 1 at 9-10), Petitioner presents no evidence that any juror was actually biased.  Moreover, Petitioner, who was present in the courtroom during the entire voir dire, affirmed that he found the jury to be acceptable (T. at 84-87).

Petitioner's unsupported and speculative assertions do not entitle him to habeas relief on this claim. See Hill v. Lockhart, 474 U.S. 52 (1985) (conclusory allegations of ineffective assistance of counsel are insufficient to raise a constitutional issue); Tejada v. Dugger, 941 F.2d 1551, 1559 (11th Cir. 1991) (vague, conclusory, or unsupported allegations cannot support an ineffective assistance of counsel claim).  Claim Three is not "substantial" so as to excuse its procedural default in state court. Martinez, 132 S. Ct. at 1318-20.  Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception applies to excuse his default of this claim.  Claim Three is dismissed as procedurally barred.

### C.   Claim Four

Petitioner asserts that Counsel was ineffective for failing to "have an extended conversation" with juror Catherine Vaughn who allegedly "stated that she would need to hear from Petitioner or she would be more inclined to rely on the State's version of events." (Doc. 1 at 11).  As in Claim Three, Petitioner did not timely present this claim to the post-conviction court and it was dismissed as untimely (Ex. D13).  This claim does not fall within Martinez' equitable exception to the procedural bar.

During voir dire, counsel questioned each juror as to whether he or she needed to hear Petitioner testify:

> Q.   Ms. Vaughn, do you want to hear from Mr. Pitts?
>
> A.   If he is proven beyond a reasonable doubt, I would not, but to me it doesn't matter.  What is focusing for me is what the state has to offer.
>
> Q.   To you, when is a trial over?  When is the case over when the state proves their case beyond a reasonable doubt or is it at the very end?
>
> A.   Obviously, if he is not going to represent himself, he is not going to provide us with a story or history, all we have to go by is what the state is producing, showing, and that to me, that would be the end.  We have nothing to compare it to.  Whereas if we were to hear evidence on his side, then the case is over after all of the evidence is in.
>
> Q.   Let me get this straight.  If the state puts on their witnesses, whether 1, 2, 5, whatever it may be, if they prove their case beyond a reasonable doubt, at that point Mr. Pitts would be guilty.  But if he testifies –
>
> A.   Maybe his story is different.  We don't know that until we hear from him.
>
> Q.   If you don't hear from Mr. Pitts?
>
> A.   Or you as his representative.
>
> Q.   Not just through me.  I will be allowed to question witnesses but if you don't hear from him personal, get up here on the witness stand and tell you what he saw and observed at all, if you don't hear from him personally are you going to hold it against him?  If Mr. Pitts, through myself, we put on no witnesses;

> the state lets you hear their police officers and everything and once the state says we're done.  We say we're done.
>
> A.  Hopefully when the state says that, you are going to extract information from them that would be advantageous to him
>
> Q.  You would hope so?
>
> A.  Yes.
>
> Q.  Is it possible that the reasonable doubt could come from my questioning a witness?
>
> A.  Yes.
>
> Q.  And not necessarily because of the defendant's testimony?
>
> A.  That's correct.

(T. at 71-72).  Nothing in the record suggests that Vaughn was biased towards the state.  To the contrary, she believed the state had the burden to prove Petitioner's guilt beyond a reasonable doubt and that it was not necessary for a defendant to testify. Competent counsel could have decided against striking Vaughn from the jury.  In addition, although given the opportunity to do so, Petitioner did not object to Vaughn. Id. at 87.

Claim Four is not "substantial" so as to excuse its procedural default in state court. Martinez, 132 S. Ct. at 1318-20 see also discussion supra Claim Three (a petitioner's failure to show that a biased juror was actually empaneled defeats a claim of Strickland prejudice).  Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception applies to excuse his

default of this claim.  Claim Four is dismissed as procedurally barred.

**D.   Claims Five, Six, and Seven**

In these claims, Petitioner asserts that Counsel was ineffective for failing to object to testimony about the robbers' use of force against the two-year-old nephew of one of the victims (Doc. 1 at 12-18).  Petitioner also argues that Counsel should have objected to the prosecutor's mention of the robbers' threat against the child in his opening statement and closing argument.  Id. at 14.  Petitioner characterizes the testimony and statements as evidence of an uncharged crime and argues that "[t]estimony regarding the acts against the child were admitted solely to demonstrate Petitioner's bad character and to prejudice him before the jury where there was clearly no relevance between the robbery and the uncharged assault." Id. at 12.  Petitioner did not timely present these arguments to the post-conviction court, and they were dismissed as procedurally barred (Ex. D13).  These claims do not fall within Martinez' equitable exception to the procedural bar.

At trial, Susan Rafferty testified that on June 18, 2004, she answered her doorbell and two men, Petitioner and Smith, forced their way into her home.  Smith put her into a head lock, put a gun against her head, and forced her into a room with her roommate and two-year-old nephew Zachary.  The robbers demanded drugs and jewelry and threatened to kill all of them if they did not comply.  Petitioner put a gun to Zachary's head.  Still in a headlock,

Rafferty was taken to look for jewelry and drugs.  Petitioner told Smith to hog tie the residents with tape.  Rafferty began screaming, and Petitioner told Smith to shoot her. Smith shot at her and missed.  Petitioner then hit her in the head with his gun causing an injury that required four staples.  Smith followed Rafferty into the bathroom and told her "you're going to die." Rafferty kicked the bedroom door shut, and the robbers left (T. at 120-161).

Dawn Leinbaugh testified that she awoke from a nap on her sofa to find two men standing near her with guns, and one had Rafferty in a head lock.  The men demanded money, purses, coke, and weed.  Zachary began whining and Petitioner told Smith to "shut up the kid" or "shoot him."  Smith then pressed the gun against Zachary's head.  Petitioner also put his gun against Zachary's head.  Leinbaugh stayed on the sofa and attempted to make eye contact with Zachary to let him "know that he would be okay."  Smith dragged Rafferty into the bedroom while Petitioner went through the house with his gun drawn and told her not to get up or he would shoot them.  She heard a gunshot and thought that Rafferty had been shot.  Smith then hogtied Leinbaugh at Petitioner's direction.  The robbers repeatedly told the victims not to look at them. Petitioner told Leinbaugh not to call the police or they would come back and kill them (T. at 163-192).

Under Florida law, robbery is defined as "the taking of money or other property which may be the subject of larceny from the person or custody of another, with intent to either permanently or temporarily deprive the person or the owner of the money of other property, when in the course of the taking there is the use of force, violence, assault, **or putting in fear**." Fla. Stat. § 812.13(1) (2004)(emphasis added).[7] "The fear contemplated by the statute is the 'fear of death or great bodily harm.'" Magnotti v. State, 842 So.2d 963, 965 (Fla. 4th DCA 2003)(quoting Smithson v. State, 689 So.2d 1226, 1228 (Fla. 5th DCA 1997)). Under this definition, putting a gun to Zachary's head was designed to cause Rafferty and Leinbaugh fear that the robbers would harm him if they did not comply with their demands. That the robbers' actions could have also been charged as a separate crime against Zachary does not render inadmissible the evidence on this element of robbery. Moreover, Petitioner's argument that "neither victim testified that anything about [the threat to Zachary] compelled them to comply with any demands allegedly made by robbers" is unavailing (Doc. 1 at 17). If a reasonable person would have been fearful that Zachary would be harmed if he or she did not comply with the robbers' demands, then the victims were in fear for the

---

[7] Home-invasion robbery is a "robbery that occurs when the offender enters a dwelling with the intent to commit a robbery, and does commit a robbery of the occupants therein." Fla. Stat. § 812.135(1).

purpose of the robbery statute's requirement of "use of force, violence, assault or putting in fear." State v. Baldwin, 709 So. 2d 636, 637 (Fla. 2d DCA 1998).  No testimony was required that the robbers' actions had their intended effect.

Because "putting in fear" is an element of home invasion robbery, reasonable counsel could have concluded that no grounds existed for an objection to the victims' testimony and the prosecutor's statements regarding Zachary's assault.  An attorney is not ineffective for failing to raise or preserve a meritless issue. United States v. Winfield, 960 F.2d 970, 974 (11th Cir. 1992)(a lawyer's failure to preserve a meritless issue cannot prejudice a client).

Claims Five, Six, and Seven are not "substantial" so as to excuse their procedural default in state court. Martinez, 132 S. Ct. at 1318-20.  Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception applies to excuse his default.  These claims are dismissed as procedurally barred.

**E.   Claim Eight**

Petitioner asserts that Counsel was ineffective for failing to impeach the State's fingerprint analyst, Ivan Kiselev ("Kiselev"), with prior deposition testimony (Doc. 1 at 18-19).  Specifically, Petitioner claims that at his deposition, Kiselev stated that the prints found on the clear plastic tape "could not be identified to Petitioner or anyone else," but at trial he testified that the prints belonged to Petitioner. Id.  Petitioner argues that "had Counsel

impeached Kiselev with his prior inconsistent analysis of the evidence, there is a reasonable probability that such impeachment would have cast doubt on Kiselev's entire testimony, and shown the jury that the analysis of the prints was wrong." Id. at 19.

Petitioner raised this claim in his Rule 3.850 motion, and the post-conviction denied the claim as follows:

> Defendant argues that trial counsel was ineffective for failing to cross-examine the State's fingerprint expert Dr. Ivan Kiselev with his deposition. Specifically, Defendant asserts that Dr. Kiselev's trial testimony about Defendant's fingerprints matching those on tape at the crime scene conflicted with deposition testimony that the prints were insufficient for comparison.

> A review of the record reveals that Dr. Kiselev's deposition testimony occurred on March 1, 2005, two years before trial commenced. When asked about fingerprints located on various pieces of tape during deposition, Dr. Kiselev stated that he did not process them. When questioned about the comparison of the prints, he testified that they were insufficient because there were less than 12 points of identification. At that time, Dr. Kiselev stated that he could not identify the fingerprints and that he could not answer whether the prints corresponded to the Defendant's. In response, trial counsel stated that the deposition may have to be continued in order for the comparison to occur.

> The State motioned the Court to have Defendant's fingerprints taken again in order to have a proper comparison. On April 11, 2005, the State attempted to take Defendant's fingerprints but he refused to appear in Court and his fingerprints were taken at a later point in jail. Trial counsel subsequently objected to the second set of fingerprints for lack of authentication, and the Court ordered

> that Defendant's fingerprints be taken again
> during trial. Dr. Kiselev's trial testimony
> consisted of his comparison of the prints
> taken from the scene to those taken during
> trial. Although Defendant asserts that Dr.
> Kiselev's deposition was inconsistent, the
> Court finds that his deposition was
> inconclusive since a proper set of
> fingerprints had not been taken. Therefore,
> the Court finds that Defendant has failed to
> meet his burden of demonstrating that counsel
> acted deficiently or that he was prejudiced
> within the meaning of <u>Strickland</u>.

(Ex. D13 at 4-5) (internal citations to the record omitted).

Florida's Second District Court of Appeal *per curiam* affirmed (Ex. D15).

Petitioner presents no "clear and convincing" evidence to refute the post-conviction court's factual determination that Kiselev's "deposition was inconclusive since a proper set of fingerprints had not been taken." (Ex. D13 at 5); see 28 U.S.C. § 2254(e)(1)("[A] determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence."). A review of Kiselev's deposition transcript and trial testimony compels a conclusion that Counsel was not ineffective for failing to impeach Kiselev.

Kiselev was deposed on March 1, 2005 (Doc. 16 at 36-58). During the testimony, he confirmed that a roll of clear tape with blood stains was found in the victims' front yard and a piece of clear tape with blood stains was found in the front room of their

residence (Doc. 16 at 45).  Kiselev testified that the prints
recovered from the front yard roll of tape contained less than the
required twelve points for identification. Id. at 46.  However,
he testified that he did not process the prints on the other piece
of tape. Id. at 47.  Later, the following exchange occurred:

> Q.   Now apparently there were some six latent
>      cards collected –
>
> A.   Yes.
>
> Q.   From the tape?  Was there any indication
>      of the identification from the tape?
>
> A.   No, sir.
>
> Q.   And can you explain that?
>
> A.   Yes, it might be just partial prints, and
>      if it was less that [sic] 12 points we
>      don't even consider them because this is
>      our policy.

Id. at 49.  The deposition transcript does not indicate whether
counsel's question about the six latent prints referred solely to
the outside roll of tape or included the prints recovered from the
inside piece of tape.

At trial, Kiselev testified that one print from one piece of
tape matched that of Petitioner (T. at 222, 285-86).  Given that
Kiselev testified in his deposition that he had not processed the
inside piece of tape and given the ambiguity and lack of clarity
of Kiselev's deposition testimony (which occurred two years prior

to the trial),[8] the post-conviction court reasonably concluded that Kiselev's deposition testimony was merely inconclusive rather than inconsistent (Ex. D13 at 5).  Moreover, the deposition testimony was confusing.  Reasonable counsel could have decided against attempting to impeach Kiselev with his ambiguous deposition testimony.

The state courts' adjudication of this claim was neither contrary to, nor an unreasonable application of, Strickland, and Petitioner is not entitled to federal habeas corpus relief. 28 U.S.C. § 2254(d)

### F.    Claim Nine

Petitioner asserts that Counsel was ineffective for telling him that the jury would learn he had been convicted of another armed robbery if he testified at trial (Doc. 1 at 20-21). Petitioner argues that, had Counsel not rendered deficient advice, he would have testified that the victims were mistaken in their identifications and that he did not know Terry Smith at the time of the robbery. Id. at 22.  Petitioner did not timely present this claim to the post-conviction court, and it was dismissed as untimely (Ex. D13).  Because the magnitude and quality of the evidence against Petitioner compels a conclusion that he cannot demonstrate Strickland prejudice from his failure to testify, this claim does

---

[8] Counsel was appointed only weeks prior to trial and did not participate in Kiselev's deposition.

not fall within <u>Martinez</u>' equitable exception to the procedural bar.

In addition to the victims' identification of Petitioner as a robber, his palm print was found on the victims' front door and his fingerprint was found on a piece of tape used to bind one of the victims (T. at 138-40, 142, 144-45, 166, 169, 173-74, 189, 222, 282-86). Moreover, had he testified, the jury would have learned that Petitioner was a convicted felon. <u>See</u> Fla. Stat. § 90.610(a)("A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime was punishable by death or imprisonment in excess of 1 year under the law under which the witness was convicted, or if the crime involved dishonesty or a false statement regardless of the punishment[.]"). Given Petitioner's motivation to lie and the strong evidence against him, his self-serving testimony would have had little credibility with the jury.

This claim is not "substantial" so as to excuse its procedural default in state court. <u>Martinez</u>, 132 S. Ct. at 1318-20. Nor has Petitioner presented new, reliable evidence indicating that the actual innocence exception applies to excuse his default of this claim. Claim Nine is dismissed as procedurally barred.

   **G.   Claim Ten**

Petitioner asserts that Counsel was ineffective for failing to call co-defendant Terry Smith to testify that "Petitioner did not

meet Smith until sometime in July in the county jail and did not know him prior to that time." (Doc. 1 at 22-23).  Petitioner did not timely present this claim to the post-conviction court, and it was dismissed as untimely (Ex. D13).  Claim Ten does not fall within Martinez' equitable exception to the procedural bar.

Petitioner presents no evidence to support his contention that Smith would have testified as he suggests.  Habeas courts generally view ineffective assistance claims with great caution when the only evidence of a missing witness' testimony comes from the petitioner. See Schwander v. Blackburn, 750 F.2d 494, 500 (5th Cir. 1985). Evidence of the testimony of a putative witness "must generally be presented in the form of actual testimony by the witness or on affidavit. A defendant cannot simply state that the testimony would have been favorable; self-serving speculation will not sustain an ineffective assistance claim." United States v. Ashimi, 932 F.2d 643, 650 (7th Cir. 1991) (footnotes omitted); Streeter v. United States, 335 F. App'x 859, 864 (11th Cir. 2009)("[M]ere speculation that missing witnesses would have been helpful is insufficient to meet the petitioner's burden of proof.") (citing Johnson v. Alabama, 256 F.3d 1156, 1187 (11th Cir. 2001)). Petitioner has presented no actual testimony or affidavit from Terry Smith indicating the nature of his testimony.  Further, given that Smith had already been convicted for his participation in the crime, his testimony would have suffered the same

credibility problem as Petitioner's. See discussion supra Claim
Nine.

Because Petitioner cannot demonstrate Strickland prejudice,
this claim is not "substantial" so as to excuse its procedural
default in state court. Martinez, 132 S. Ct. at 1318-20.  Nor has
Petitioner presented new, reliable evidence indicating that the
actual innocence exception applies to excuse his default of this
claim.  Claim Ten is dismissed as procedurally barred.

   **H.   Claim Eleven**

Petitioner asserts that the cumulative effect of Counsel's
errors and trial court error deprived him of his right to due
process (Doc. 1 at 25-28).  This Court need not determine whether,
under current Supreme Court precedent, cumulative error claims can
ever succeed in showing that the state court's adjudication on the
merits was contrary to or an unreasonable application of clearly
established federal law.  Petitioner has not shown an error of
constitutional dimension with respect to any federal habeas claim.
Therefore, he cannot show that the cumulative effect of the alleged
errors deprived him of fundamental fairness in the state criminal
proceedings. See Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117,
1132 (11th Cir. 2012)(refusing to decide whether post-AEDPA claims
of cumulative error may ever succeed in showing that the state
court's decision on the merits was contrary to or an unreasonable
application of clearly established law, but holding that
petitioner's claim of cumulative error was without merit because

none of his individual claims of error or prejudice had any merit);
Forrest v. Fla. Dep't of Corr., 342 F. App'x 560, 565 (11th Cir.
2009)(noting absence of Supreme Court precedent applying
cumulative error doctrine to claims of ineffective assistance of
counsel, but holding that the petitioner's cumulative error
argument lacked merit because he did not establish prejudice or
the collective effect of counsel's error on the trial); Hill v.
Sec'y, Fla. Dep't of Corr., 578 F. App'x 805 (11th Cir.
2014)(same).  Petitioner is not entitled to federal habeas relief.

Any of Petitioner's allegations not specifically addressed
herein have been found to be without merit.

## IV.  **Certificate of Appealability**[9]

Petitioner is not entitled to a certificate of appealability.
A prisoner seeking a writ of habeas corpus has no absolute
entitlement to appeal a district court's denial of his petition.
228 U.S.C. § 2253(c)(1)  Rather, a district court must first issue
a certificate of appealability ("COA").  "A [COA] may issue . . .
only if the applicant has made a substantial showing of the denial
of a constitutional right." 228 U.S.C. § 2253(c)(2). To make such
a showing, Petitioner must demonstrate that "reasonable jurists

---

[9] Pursuant to Rule 11(a) of the Rules Governing Section 2254
Cases in the United States District Courts, the "district court
must issue or deny a certificate of appealability when it enters
a final order adverse to the applicant." Id.  As this Court has
determined that Petitioner is not entitled to habeas corpus relief,
it must now consider whether Petitioner is entitled to a
certificate of appealability.

would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004)(quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" Miller–El v. Cockrell, 537 U.S. 322, 335–36 (2003).  Petitioner has not made the requisite showing.

Because Petitioner is not entitled to a certificate of appealability, he is not entitled to appeal *in forma pauperis.*

ACCORDINGLY, it is hereby **ORDERED:**

1.   The Florida Attorney General is dismissed from this action.

2.   Claims Three, Four, Five, Six, Seven, Nine, and Ten of Petitioner's 28 U.S.C. § 2254 petition are **DISMISSED**.   All remaining claims are **DENIED**.

3.   Petitioner is **DENIED** a certificate of appealability.

4.   The Clerk of Court is directed to terminate any pending motions, enter judgment accordingly, and close this case.

**DONE** and **ORDERED** in Fort Myers, Florida on this   12th   day of January, 2016.

JOHN E. STEELE
SENIOR UNITED STATES DISTRICT JUDGE

SA: OrlP-4
Copies: Savario S. Pitts
Counsel of Record